1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8    RICHARD WHITAKER,

9                          Petitioner,          Case No. C19-1167-JCC-MAT

10         v.

11    DONALD HOLBROOK,                            REPORT AND RECOMMENDATION

12                          Respondent.

13

14              INTRODUCTION AND SUMMARY CONCLUSION

15         Petitioner Richard Whitaker is a state prisoner who is currently confined at the Washington

16    State Penitentiary in Walla Walla, Washington.  He has filed a petition for writ of habeas corpus

17    under 28 U.S.C. § 2254 challenging his 2016 King County Superior Court judgment and sentence.[1]

18    Respondent has filed an answer to the petition and has submitted relevant portions of the state

19    court record.  This Court, having reviewed petitioner's petition, respondent's answer, and the

20    balance of the record, concludes that petitioner's second amended petition for writ of habeas

21    corpus should be denied and this action should be dismissed with prejudice.

22    _____

23         [1] Petitioner's second amended petition, filed October 31, 2019, is the operative petition in this action.  (Dkt. 12.)

REPORT AND RECOMMENDATION
PAGE - 1

FACTUAL/PROCEDURAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying petitioner's convictions as follows:

> In the early morning hours of December 13, 2015, Richard Whitaker was selling crack cocaine in the Belltown neighborhood of Seattle. Whitaker was accompanied by his girlfriend, Wendy White. Whitaker had a .45 semi-automatic pistol in his backpack.
>
> According to White, at some point in the evening, Brent McDonald approached her and asked if she would sell him drugs. White did not know McDonald. She refused, concerned that McDonald might be an undercover officer, because he was clean cut and "just didn't look like your typical user." McDonald left and White lost sight of him. White testified that McDonald approached them several times that night asking to buy drugs. Each time, Whitaker told McDonald to go away and each time he complied.
>
> At around 3:00 a.m., McDonald approached Whitaker and White again. White described McDonald's attitude as "cocky" and that she was "uneasy." However, White testified that she was not scared by McDonald and did not feel that she was in danger. White admitted that McDonald did not hurt her, display a weapon or even raise his voice at her.
>
> > I mean I didn't think he was coming to hit me or something, but I didn't know what he was going to do, and it's that unknown that creates the fear. It's not like that he had a hatchet and he was like chasing after me. It wasn't nothing like that. But it's like when you're coming towards a person that has asked you to leave them alone. I can't imagine there's positive intent. It's just – it just felt very uncomfortable.
>
> Whitaker asked McDonald, in an aggressive tone, "[W]hy are you following us?" McDonald responded, "I'll walk these free streets of America wherever I want to walk." McDonald continued to approach until he was approximately four to five feet away from White. Whitaker pulled the gun out of his backpack and shot McDonald. The bullet entered McDonald's right side and exited his left side. McDonald died almost instantly.
>
> Whitaker and White fled in White's car. The following day, Whitaker threw the gun into Lake Washington.
>
> Police arrested Whitaker based on a tip from a confidential informant that Whitaker had admitted to killing McDonald. The State charged Whitaker with

second degree murder while armed with a firearm.[2]

At trial, Whitaker admitted that he shot McDonald but asserted he had done so in self-defense. Whitaker testified that he supported himself selling crack cocaine. He stated that it was a dangerous business and that he had previously been stabbed and robbed at gunpoint by customers. Whitaker testified that he shot McDonald because McDonald had repeatedly approached White that evening and he believed McDonald intended to hurt her.

The State presented the testimony of several employees at the bar where McDonald had been that evening. All of them testified that McDonald, who was a regular customer, was soft-spoken and friendly and never aggressive. The State also presented the testimony of several witnesses who lived or worked in the area of the shooting, none of whom heard raised voices or threats. In addition, the State introduced surveillance video that recorded the incident. The video shows McDonald approaching and appearing to talk to White, while White calmly smoked a cigarette. McDonald appears to walk away just as Whitaker fires the gun.

At Whitaker's request, the trial court instructed the jury on the defense of justifiable homicide. A jury convicted Whitaker as charged.

(Dkt. 16, Ex. 2 at 1-3.)

Petitioner appealed from his judgment and sentence and, on June 11, 2018, the Washington Court of Appeals issued an unpublished opinion affirming the judgment. (*See id.*, Exs. 2-6.) Petitioner thereafter sought review by the Washington Supreme Court. (*See id.*, Exs. 7-8.) Petitioner presented the following two issues to the Supreme Court for review:

1. Is a defendant's right to due process violated when the trial court gives the jury an instruction on justifiable homicide that is ambiguous as to the State's burden of proof?

2. Is a defendant denied effective assistance of counsel where counsel assents to an instruction that is misleading as to the State's burden of proof?

(*Id.*, Ex. 7 at 1.) The Supreme Court denied review without comment on October 3, 2018, and the

---

[2] [Court of Appeals footnote 1] Whitaker was also charged with and convicted of first degree unlawful possession of a firearm. Whitaker does not challenge this conviction.

REPORT AND RECOMMENDATION
PAGE - 3

Court of Appeals issued its mandate terminating direct review on October 26, 2018.  (*Id*., Exs. 9-10.)  Petitioner now seeks federal habeas review of his second degree murder conviction.

## GROUNDS FOR RELIEF

Petitioner identifies the following two grounds for relief in his federal habeas petition:

GROUND ONE:  Trial court's answer to the jury's question was misleading as to the State's burden of proof.

GROUND TWO:  Effective Assistance of Counsel

(Dkt. 12 at 6, 10.)

## DISCUSSION

Respondent concedes that petitioner properly exhausted his state court remedies by fairly presenting his two grounds for relief to the Washington Supreme Court as federal claims.  (*See* Dkt. 15 at 4.)  Respondent argues, however, that petitioner is not entitled to relief in this federal habeas action because the state court adjudication of his claims was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  (*See id*. at 5-15.)

## Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

REPORT AND RECOMMENDATION
PAGE - 4

1   court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

2   or if the state court decides a case differently than the Supreme Court has on a set of materially

3   indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

4   "unreasonable application" clause, a federal habeas court may grant the writ only if the state court

5   identifies the correct governing legal principle from the Supreme Court's decisions, but

6   unreasonably applies that principle to the facts of the prisoner's case. *See id.* at 407-09.

7          The Supreme Court has made clear that a state court's decision may be overturned only if

8   the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The

9   Supreme Court has also explained that "[a] state court's determination that a claim lacks merit

10  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

11  the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v.

12  Alvarado*, 541 U.S. 652, 664 (2004)).

13         Clearly established federal law means "the governing legal principle or principles set forth

14  by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-

15  72. "If no Supreme Court precedent creates clearly established federal law relating to the legal

16  issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or

17  an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955

18  (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

19         In considering a habeas petition, this Court's review "is limited to the record that was

20  before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170,

21  181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state

22  court, such determination shall be presumed correct, and the applicant has the burden of rebutting

23  the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

REPORT AND RECOMMENDATION
PAGE - 5

1

<u>Ground One:  Instructional Error</u>

2

3    Petitioner asserts in his first ground for relief that the trial court's answer to a jury question

4   which arose during deliberations was misleading as to the State's burden of proof.  (Dkt. 12 at 6.)

5   Petitioner maintains that the trial court's instruction improperly suggested that it was the

6   defendant's burden to prove the elements of justifiable homicide rather than the State's burden to

7   prove the absence of one or more of the elements of justifiable homicide.  (*See id.*; Dkt. 16, Ex. 3

8   at 1.)

9    Claims of error concerning state jury instructions are generally matters of state law that are

10  not cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  The

11  question a federal habeas court must address when reviewing claims of instructional error in a state

12  court trial is "whether the ailing instruction by itself so infected the entire trial that the resulting

13  conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  A challenged

14  instruction "may not be judged in artificial isolation," but must be considered in the context of the

15  instructions as a whole and the trial record.  *Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147).

16    To merit relief when an ambiguous instruction is given, there must be a "'reasonable

17  likelihood' that the jury applied the instruction in a way that relieved the State of its burden of

18  proving every element of the crime beyond a reasonable doubt."  *Waddington v. Sarausad*, 555

19  U.S. 179, 190-91 (2009) (citation omitted).  A mere possibility that the jury misapplied the

20  challenged instruction is not enough to establish a due process violation.  *Id*. at 191.  Even where

21  a constitutional error is established, habeas relief is warranted only where the error had a

22  "substantial and injurious effect or influence in determining the jury's verdict."  *Calderon v.

23  Coleman*, 525 U.S. 141, 145-47 (1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

    The Washington Court of Appeals rejected petitioner's claim of instructional error on

REPORT AND RECOMMENDATION
PAGE - 6

direct appeal.  The court explained its conclusion as follows:

> Whitaker contends that he was denied due process because the trial court's response to a jury's question about the justifiable homicide instruction confused the jury as to the State's burden of proof.

> "Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law."  State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002).  Self-defense instructions, read as a whole, must make the relevant legal standard manifestly apparent to the average juror. State v. Sullivan, 196 Wn. App. 277, 291-92, 383 P.3d 574 (2016).

> A homicide is justifiable if the slayer acts in lawful defense of the slayer or another person, being in reasonable fear of imminent great personal injury or death. RCW 9A.16.050.  If there is some evidence tending to prove the defendant acted in self-defense, the State has the burden of proving the absence of self-defense beyond a reasonable doubt.  State v. McCullum, 98 Wn.2d 484, 490, 656 P.2d 1064 (1983).

> The trial court gave the standard instruction for justifiable homicide.  Jury Instruction 15 provided,

> > It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.

> > Homicide is justifiable when committed in the lawful defense of the slayer or any person in the slayer's presence or company when:

> > 1)  the slayer reasonably believed that the person slain intended to commit a felony or to inflict death or great personal injury;

> > 2)  the slayer reasonably believed that there was imminent danger of such harm being accomplished; and

> > 3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.

> > The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable.  If you find that the State has not proved the absence of this defense beyond a reasonable

REPORT AND RECOMMENDATION
PAGE - 7

doubt, it will be your duty to return a verdict of not guilty.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.02 (4th ed. 2016) (WPIC).

In closing argument, defense counsel misstated the State's burden of proof regarding the defense of justifiable homicide:

> And there are two important things to remember here. The first is that this is the State's burden to disprove. This isn't the defendant's burden to prove what was going on. It is the State's burden to prove beyond a reasonable doubt that these factors don't apply, that they weren't met, that that isn't what happened here.
>
> . . . .
>
> The State has to prove beyond a reasonable doubt that Mr. Whitaker didn't reasonably believe that he was in imminent danger, and the State has to prove to you that Mr. Whitaker's use of force was unreasonable given the facts and circumstances as they appeared to Mr. Whitaker at the time.

(Emphasis added.)    In rebuttal, the prosecutor corrected defense counsel's misstatement of law, explaining that because all three elements of the definition must exist in order for a homicide to be justified, the State was only required to disprove one in order to negate the defense:

> You heard the defense counsel talk a little bit about instruction 15, and I need you to really pay attention to it, because what defense told you is that the State has to prove not only that he didn't believe – that he believed that he was in fear of great bodily injury, but that also that he was in imminent danger of being harmed and that the force used was reasonable.
>
> What the instruction actually says is that justifiable homicide occurs when all three of those things are met, which means if the State can show you that the defendant's behavior was not reasonable, that his conduct was not reasonable, that it does not matter what was in his mind at the time. If he didn't use reasonable force, then the homicide is not justifiable.
>
> So take a look at your instruction. See that all three things have to be met before a homicide is justified, and you will be confident that it was not.

REPORT AND RECOMMENDATION
PAGE - 8

During deliberations, the jury submitted the following written question:

> Do all three elements have to be met in order for a homicide to be justifiable? i.e. [sic] if 2 of 3 elements are met, is it justifiable?

When the parties met to discuss the question, the trial court stated,

> Okay. I think this instruction is very confusing because it requires the jury to sort of look at a double negative. If the parties want to agree, that's fine. I would be prepared to instruct the jury as follows: "The State has the burden or proving beyond a reasonable doubt that the homicide was not justifiable. The State can carry this burden by proving beyond a reasonable doubt that one or more of the three elements in Instruction 15 has not been established."

Defense counsel stated,

> I might suggest that instead of it has not been established, "is not true" – my concern about has not been established is it kind of sounds like it's something that the defense has an obligation to establish that there's – that that's my requirement.
>
> . . . .
>
> . . . I think my – my concern – [is that] maybe "that does not exist" is – is easier – my concern is that we're talking about it hasn't been proven or it hasn't been established. I think that suggests that the defense has an obligation to prove it initially and then the State is disproving and I don't think that's an accurate reflection of the instruction – I think we could say – I think we could just end it with "is not true" maybe or "one of those elements is not true."

The parties ultimately agreed on the following response to the jury:

> The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. A homicide is justifiable when all three elements in Instruction 15 are met.

(Emphasis added.)

Whitaker contends that the phrase "when all three elements in Instruction 15 are met" would cause a reasonable juror to infer "that his or her duty was to start with a determination as to whether the defense had established the three elements."

We disagree. Here, the trial court's response to the jury question was an

REPORT AND RECOMMENDATION
PAGE - 9

accurate statement of the law.  The trial court correctly informed the jury that the State had the burden of proving beyond a reasonable doubt that the homicide was not justifiable.  The trial court then reiterated instruction 15, which states that a homicide is justifiable when three elements are present:  that Whitaker reasonably believed McDonald intended to inflict death or great bodily harm; that Whitaker reasonably believed there was imminent danger of such harm; and that Whitaker's use of force was reasonable under the circumstances.  In other words, the trial court properly instructed the jury that the State had the burden to show that all three elements were not met.

Contrary to Whitaker's assertion, the jury question does not indicate that the jury misunderstood the burden of proof.  It appears that the question arose following defense counsel's misstatement of law in closing argument.  The jury was understandably confused as to whether the State had to prove all of the elements in instruction 15 or just one of them.  However, at no point did the jury evince any confusion as to which party held the burden of proof.[3]

(Dkt. 16, Ex. 2 at 4-8.)

The Washington Court of Appeals' conclusion that the trial court's response to the jury question was an accurate statement of the law is entitled to deference by this Court because the conclusion is effectively based on the state court's interpretation of state law.  The Court of Appeals reasonably rejected petitioner's claim that the jury was confused by the trial court's answer to the jury question or misunderstood the burden of proof.  As the Court of Appeals noted, the trial court, in its answer to the jury's question, specifically instructed the jury that the state had the burden of proving beyond a reasonable doubt that the homicide was not justifiable and then referred the jury back to the relevant portion of the underlying justifiable homicide instruction.  Because the jury did not ask any follow-up questions, it is presumed that the jury understood the trial court's response and appropriately applied the instructions referenced in that response.  *See Waddington v. Sarausad*, 555 U.S. at 195–96 (citing *Weeks v. Angelone*, 528 U.S. 225, 234

---

[3] [Court of Appeals footnote 2] Because we conclude that the trial court's response to the jury question was proper, we need not address the State's assertion that Whitaker has waived any challenge by inviting the error.

REPORT AND RECOMMENDATION
PAGE - 10

(2000)).  Petitioner offers nothing to rebut that presumption.  As the record is devoid of any evidence that the jury misunderstood or misapplied the challenged instruction, petitioner's federal habeas petition should be denied with respect to his first ground for relief.

Ground Two:  Ineffective Assistance of Counsel

Petitioner asserts in his second ground for relief that his trial counsel rendered ineffective assistance when he failed to object to the misleading instruction provided in response to the jury question posed during deliberations.  (Dkt. 12 at 10.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).  Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*.  Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness.  *Id*. at 688.  Judicial scrutiny of counsel's performance must be highly deferential.  *Id*. at 689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a

REPORT AND RECOMMENDATION
PAGE - 11

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

The Washington Court of Appeals rejected petitioner's ineffective assistance of counsel claim on direct appeal as well:

> In the alternative, Whitaker contends, he was denied effective assistance of counsel because defense counsel assented to the erroneous response. To prevail on this claim, Whitaker must demonstrate both that defense counsel's conduct was deficient and that the deficient performance resulted in prejudice. State v. Nichols, 161 Wn.2d 1, 8, 162 P. 3d 1122 (2007). We strongly presume that counsel's representation was effective. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Because, as discussed above, the trial court did not misstate the law or shift the burden of proof, defense counsel's performance was not deficient. Nor is there any reasonable probability that defense counsel's assent to the trial court's wording of the response changed the outcome of the trial.

(Dkt. 16, Ex. 2 at 8.)

The standard applied by the Court of Appeals was consistent with that set forth in *Strickland*, and the court reasonably concluded that counsel's performance was not deficient

REPORT AND RECOMMENDATION
PAGE - 12

1   because there was no error in the trial court's instructions to the jury and, in any event, petitioner

2   demonstrated no prejudice.  Petitioner makes now showing that the decision of the Court of

3   Appeals was contrary to, or constituted an unreasonable application of, clearly established federal

4   law as determined by the United States Supreme Court and, thus, his federal habeas petition should

5   be denied with respect to his second ground for relief as well.

6                                   Certificate of Appealability

7        A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

8   dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA)

9   from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has

10  made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  A

11  petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

12  district court's resolution of his constitutional claims or that jurists could conclude the issues

13  presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537

14  U.S. 322, 327 (2003).  Under this standard, this Court concludes that petitioner is not entitled to a

15  certificate of appealability with respect to any of the claims asserted in his petition.

16                                       CONCLUSION

17       For the reasons set forth above, this Court recommends that petitioner's second amended

18  petition for writ of habeas corpus be denied and that this action be dismissed with prejudice.  This

19  Court further recommends that a certificate of appealability be denied.  A proposed order

20  accompanies this Report and Recommendation.

21                                        OBJECTIONS

22       Objections to this Report and Recommendation, if any, should be filed with the Clerk and

23  served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

REPORT AND RECOMMENDATION
PAGE - 13

and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on <u>**April 10, 2020**</u>.

DATED this <u>19th</u> day of March, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 14